**PAULETTE L. STEWART**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**901 Front Street, Suite 1100**
**Helena, MT 59626**
**Phone: (406) 657-6101**
**FAX: (406) 657-6989**
**Email: paulette.stewart@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 23-77-BLG-SPW** |
| **Plaintiff,** | |
| **vs.** | **UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS INDICTMENT** |
| **ENRIQUE ANDRES DONEY,** | |
| **Defendant.** | |

Enrique Andres Doney is charged with receipt of firearm while under indictment, in violation of 18 U.S.C. § 922(n). Doney moves to dismiss the indictment arguing that 18 U.S.C. § 922(n) is unconstitutional after the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Docs. 18-19.

1

This Court recently addressed this issue in *United States v. Kyle David Evenson*, CR-23-24-BLG-SPW and ruled in favor of the constitutionality of the statute.   CR-23-24-BLG-SPW Doc. 28 (addressing both 18 U.S.C. §§ 922(g)(3) and 922(n).   This Court previously addressed the same two statutes in *United States v. Jaren Michael Stennerson*, CR-22-139-BLG-SPW with the same result. CR-22-139-BLG-SPW Doc. 26.   The arguments in this case are largely identical.

Doney's claim fails because the Second Amendment's protections do not extend to the receipt of firearms by those pending felony charges.   Section 922(n) falls within the nation's long-standing tradition of disarming citizens who engage in criminal activity, those with mental impairments, or those who were otherwise deemed dangerous.

## ARGUMENT

The Second Amendment states that it is "the right of the people to keep and bear Arms" and that right "shall not be infringed."   U.S. Const. Amend. II. However, that right is not unlimited.   *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008).

The Supreme Court has recognized that the Second Amendment allows a "variety" of firearms regulations.   *Heller*, 554 U.S. at 636.   The Supreme Court has stressed that its decisions apply to "law-abiding, responsible citizens" and do

not "cast doubt on longstanding prohibitions of the possession of firearms by felons."   *Heller*, 554 U.S. at 626, 635.

While the Supreme Court's recent decision in *Bruen* defined the framework for analyzing Second Amendment challenges, it did not abrogate long-standing legal precedent or the regulatory prohibitions of certain persons possessing firearms.   *Bruen* analyzed the constitutionality of a New York firearm licensing scheme where an applicant had to show "proper cause" in order to obtain a license to carry a handgun for self-defense.   142 S. Ct. at 2123.   The Court held the New York statute violated the Second Amendment because it allowed officials to restrict "law-abiding citizens" from exercising a fundamental right.   *Id*. at 2156. In doing so, the Court defined the analytical framework for determining whether a firearm regulation is constitutional.   The *Bruen* framework established that courts must assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding.   *Id*. at 2131.   First, the court must determine if the Second Amendment's plain text covers an individual's conduct.   *Id*. at 2126.   If it does not, the analysis ends, and the regulation is deemed valid.   *Id.*   If the conduct is covered by the Amendment's text, the conduct is presumed protected.   *Id.*   The government must then demonstrate that the regulation, in this case a firearms regulation impinging on a Second

3

Amendment right, is consistent with "this Nation's historical tradition."   *Id*.

Drawing on that tradition, *Heller* recognized, and *Bruen* reiterated, that the right to

bear arms belongs only to "law-abiding, responsible citizens."   *Id*. at 2131

(*quoting Heller*, 554 U.S. at 635).

The Court's decision in *Bruen* did not undermine its precedent in *Heller* or

*McDonald v. City of Chicago*, 561 U.S. 742 (2010).   The Court applied "[t]he test

we set forth in *Heller*" but made it "more explicit."   142 S. Ct. at 2131, 2134.

The *Bruen* Court noted that this analogical inquiry required that the government

need only "identify a well-established and representative historical *analogue*, not a

historical *twin*."   *Id*. at 2133.   "Even if a modern-day regulation is not a dead

ringer for historical precursors, it still may be analogous enough to pass

constitutional muster."   *Id*. at   2118.

*Bruen* has not overruled precedent.   Binding precedent may be deemed

overruled only "where the reasoning or theory of" the earlier "authority is clearly

irreconcilable with the reasoning or theory of intervening higher authority."

*Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003).   That "is a high standard."

*Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018) (citation omitted).

"[T]ension" between cases is not enough. *Id*.   Thus, "[s]o long as [a] court can

apply . . . prior precedent without running afoul of the intervening authority it must

4

do so." *Id*. *Bruen* does not come close to meeting that high standard. It merely did away with the "means-end scrutiny" "second step" that courts had applied in some Second Amendment cases. *Bruen*, 142 S. Ct. at 2125-27.

## I.    Receipt of firearms by those facing felony indictment is not protected by the plain text of the Second Amendment.

The Court need not consider whether § 922(n) squares with the nation's historical tradition of gun regulation because its modest restriction burdens no conduct covered by the Second Amendment's plain text.   Doney has the burden at this initial stage to show that the Second Amendment covers his conduct.   He cannot carry his burden because "the right to keep and bear arms" does not cover an indictee "receiv[ing] guns while under indictment."

### A.    The right to "keep and bear Arms" does not cover receiving guns while under indictment.

Doney cannot show that the Second Amendment's text covers receiving a gun while under indictment.   Section 922(n) states:   "It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to …receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."   In contrast to the ban on gun possession by convicted felons, drug users, or some other groups, *see, e.g.* 18 U.S.C. § 922(g), § 922(n)'s restriction is narrow.   First, "[b]y its own terms, §

5

922(n) does not prohibit *possession* of a weapon by someone under indictment, but only shipping, transportation, or receipt." *United States v. Laurent,* 861 F. Supp. 2d 71, 85 (E.D.N.Y. 2011).   So, it does not bar a person under felony indictment from continuing to possess any guns he had before the indictment.   *Id.* at 85-87. "It merely maintains the *status quo* during the pendency of the indictment, a volatile period during which the stakes and stresses of pending criminal charges often motivate defendants to do violence to themselves or others." *United States v. Khatib,* No. 12-CR-190, 2012 WL 6086862, at *4 (E.D. Wis. Dec. 6, 2012).

Second, unlike the felon-in-possession prohibition, which is permanent, § 922(n)'s restriction "is temporary.   It lasts only from indictment to conviction or acquittal." *Laurent,* 861 F.Supp. 2d at 102.   "The prohibition ends with dismissal of the charges or acquittal (or conviction for an offense that does not bar gun possession) or becomes permanent if the defendant is, for example, convicted of a felony or a misdemeanor crime of domestic violence." *Khatib*, 2012 WL 6086862, at *4.

The narrow restriction of § 922(n) does not burden "the right to keep and bear arms."   In *Heller,* the Supreme Court explained that "the most natural reading of 'keep arms' in the Second Amendment is to 'have weapons.'"   554 U.S. at 582. Section 922(n) does not burden that right because it "does not prohibit *possession*

6

of a weapon." *Laurent*, 861 F. Supp. 2d at 85. Section 922(n) did not impair

Evenson's ability to "keep" any arms he had before his indictment.   Rather, he

simply could not receive new ones during the time he was under indictment., *see*

18 U.S.C. § 922(n)*,* conduct the Second Amendment's text does not address.   *Cf.*

*Heller*, 554 U.S. at 626-27 (noting that the Court's opinion did not invalidate "laws

imposing conditions and qualifications on the commercial sale of arms"); *Nat'l*

*Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives,*

700 F.3d 185 206 (5th Cir. 2012) (holding that laws did "not severely burden the

Second Amendment rights of 18-to-20-year olds because" they did not ban use or

possession but "imposed an age qualification on commercial firearm sales").

Similarly, "[a]t the time of the founding, as now, to 'bear' meant to

'carry.'"   *Heller*, 554 U.S. at 584.   "When used with 'arms,' however, the term

has a meaning that refers to carrying for a particular purpose—confrontation."   *Id.*

In *Bruen*, the Supreme Court confirmed that "[t]his definition of 'bear' naturally

encompasses public carry" in addition to carrying a gun in one's home.   142 S. Ct.

at 2134.   Section 922(n) does not burden this right either.   Unlike the New York

licensing law that *Bruen* invalidated—which directly restricted citizens' ability to

publicly carry guns they otherwise lawfully possessed—§ 922(n)'s temporary

"receipt" restriction does not limit what citizens can do with their lawfully

possessed guns.

In some contexts, courts have suggested that the right to keep and bear arms implies the right to obtain them.   *Cf. Nat'l Rifle*, 700 F.3d at 204–05 (assuming, despite being inclined to hold otherwise, that the Second Amendment presumptively protects "the ability of 18-to-20-year-olds to purchase handguns from FFLs").   But nothing about that right implies a right of otherwise unarmed citizens to procure new arms once facing felony charges, but before the charges resolve.   Obtaining a gun in that circumstance creates distinct risks because one could reasonably "infer a malevolent intent when an indictee finds it necessary to obtain a gun during the narrow period during which an indictment is pending knowing that he will have to give it up should he be convicted."   *Khatib*, 2012 WL 6086862, at *4.   Doney cannot show that the founders intended for "the right to keep and bear arms" to protect an indictee's right to obtain guns.

**B.    The restriction on receiving guns while under indictment squares with the nation's historical tradition.**

Even if the Second Amendment's plain text covers Doney's conduct, his Second Amendment claims fail because § 922(n) is "consistent with this Nation's historical tradition of firearm regulation."   *See Bruen*, 142 S. Ct. at 2126.   Under this part of the analysis, courts look to "historical analogies" to the challenged law

8

to determine whether it resembles constitutionally accepted restrictions.   *Id.* at

2132.   "Like all analogical reasoning, determining whether a historical regulation

is a proper analogue for a distinctly modern firearm regulation requires a

determination of whether the two regulations are 'relevantly similar.'"   *Id*.

Among the features that make regulations fit for comparison, is "how and why the

regulations burden a law-abiding citizen's right to armed self-defense."   *Id*. at

2133.   In other words, where a historical and modern regulation impose similar

burdens for similar reasons, they are more appropriate for analogy.   While certain

firearms regulations may have direct analogies to permissible restrictions present at

the founding, some comparisons may "require a more nuanced approach" due to

"societal concerns or dramatic technological changes."   *Id*. at 2132.

The lengthy historical analysis in *Bruen* warns of the various pitfalls in

evaluating historical analogues.   For example, *Bruen* explains "English common-

law practices and understandings at any given time in history cannot be

indiscriminately attributed to the Framers of our own Constitution" and that "it [is]

better not to go too far back into antiquity for the best securities of our liberties."

*Id*. at 2136.   By the same token, the Supreme Court cautioned "against giving

post-enactment history more weight than it can rightly bear" when interpreting a

constitutional command.   *Id*.   Lower courts must, therefore, carefully navigate

between the Scylla of antiquity and the Charybdis of recency to determine what the Framers understood the scope of the Second Amendment to be.

To assist courts in this endeavor, *Bruen* highlighted three historical indicators that a firearms regulation was unconstitutional.   First, "when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment."   *Id*. at 2131.   Second, where the societal problem has historically been addressed by means other than firearms regulation, that may serve as evidence that the challenged regulation is unconstitutional.   *Id*.   Third, if jurisdictions attempted to enact similar regulations that were rejected on constitutional grounds, "that rejection surely would provide some probative evidence of unconstitutionality."   *Id*.

**C.      Section 922(n)'s restriction on receiving guns while under indictment is consistent with the historical tradition of restricting gun rights of citizens viewed by legislatures as unvirtuous or dangerous.**

Section 922(n) is "distinctly similar" to historical restrictions of substantially restricting the liberty of those credibly accused of wrongdoing.   *See Bruen,* 142 S. Ct. at 2131.   The constitutional question is not whether § 922(n)'s restriction has existed since the founding.   Rather, courts considering present-day gun regulations

must "reason[] by analogy."  *Id*. at 2132.

As the Ninth Circuit has already recognized, "most scholars of the Second Amendment agree that the right to bear arms was 'inextricably…tied to' the concept of a 'virtuous citizenry' and that, 'the right to bear arms does not preclude laws disarming the unvirtuous citizens.'"  *Vongxay*, 594 F.3d at 1118 (collecting scholarly sources).

Courts relying on this "'virtuous citizen' theory" have thus upheld "modern laws banning the possession of firearms by illegal aliens and juveniles— classes of people who might otherwise show, on a case-by-case basis, that they are not particularly dangerous."  *Medina v. Whitaker*, 913 F.3d 152, 159 (D.C. Cir. 2019).   In *National Rifle*, this Court rejected a Second Amendment challenge to § 922(b)(1) and (c)(1), which restrict the ability of people under 21 to buy handguns, calling that restriction "firmly historically rooted." 700 F.3d at 204.   The court explained that the regulation "is consistent with a longstanding tradition of targeting select groups' ability to access and to use arms for the sake of public safety."  *Id*. at 203.[1]

---

[1] *Bruen* abrogated *National Rifle* to the extent that it held that a gun regulation could survive a Second Amendment challenge under means-end scrutiny, even if it is not consistent with the nation's historical tradition of gun regulation.  *See* 142 S. Ct. at 2127 n.4.   But this Court was "inclined to uphold the challenged federal laws at step one of [its] analytical framework," *see Nat'l Rifle*, 700 F.3d at 204,

Courts have reasoned similarly for other categorical restrictions similar to *Heller's* non-exhaustive list of presumptively lawful regulations.   *See, e.g., Yancey*, 621 F.3d at 684–87 (relying on historical evidence to uphold § 922(g)(3)'s prohibition of gun possession by illegal drug users); *United States v. Bena*, 664 F.3d 1180, 1184 (8th Cir. 2011) (holding that § 922(g)(8)'s prohibition of gun possession by people under domestic-violence protective orders "is consistent with a common-law tradition that the right to bear arms is limited to peaceable or virtuous citizens"); *Skoien*, 614 F.3d at 640 (same for § 922(g)(9)'s prohibition of gun possession by those convicted of misdemeanor crimes of domestic violence); *United States v. Rene E.*, 583 F.3d 8, 16 (1st Cir. 2009) (rejecting a Second Amendment challenge to § 922(x), which restricts the ability of people under 18 to possess handguns, and explaining "that the founding generation would have regarded such laws as consistent with the right to keep and bear arms").   See also *United States v. Rodriguez*, 2023 WL 4044409 (5th Cir. June 16, 2023) ("There is no binding precedent holding § 922(n) unconstitutional, and it is not clear *Bruen* dictates such a result.   *Id.*   Accordingly, Rodriguez is unable to

---

which relied on the historical record and was "broadly consistent with *Heller*." *See Bruen*, 142 S. Ct. at 2127.   Nothing in *Bruen* abrogates this Court's or other courts' historical analyses, which were typically considered part of "step one" under courts' pre-*Bruen* case law.

demonstrate the requisite clear-or-obvious error.") and *United States v. Holden*, 70 F.4th 1015 (7th Cir. June 16, 2023) (reinstated false statement, § 922(a)(6), charge based on the purchaser being under indictment).   With limited exception, federal gun regulations uniformly have been upheld in the wake of *Bruen.*   *United States v. Butts,* 637 F.Supp.3d 1134, 2022 WL 16553037 (D. Mont. October 31, 2022) (collecting cases).

Like the age-based restriction addressed in *National Rifle*, § 922(n) "is consistent with a longstanding tradition of targeting select groups' ability to access … arms for the sake of public safety."   *See* 700 F.3d at 203.   Section 922(n)'s legislative history shows that, like other categorical restrictions on select groups, it "reflects a concern with keeping firearms out of the hands of categories of potentially irresponsible persons."   *Laurent*, 861 F. Supp. 2d at 82 (quoting *Barrett v. United States*, 423 U.S. 212, 220 (1976)) (ellipses omitted).   It thus reflects a permissible legislative judgment that felony indictees are among the potentially dangerous or unvirtuous citizens whose gun rights the government may restrict.   Even still, its narrow and temporary restriction on receipt burdens far less conduct than the categorical prohibition of possession by other groups, like convicted felons.

Although a person who has been indicted but not convicted is presumed

innocent, a legislature's decision to restrict felony indictees' gun access is consistent with historical public-safety laws.   A grand jury has found probable cause to believe that a felony indictee has committed "the most serious category of crime deemed by the legislature to reflect 'grave misjudgment and maladjustment.'"   *Medina*, 913 F.3d at 158 (quoting *Hamilton v. Pallozzi*, 848 F.3d 614, 626 (4th Cir. 2017)).   And, as noted, there is often good reason to "infer a malevolent intent when" someone responds to being indicted by procuring a gun. *See Khatib*, 2012 WL 6086862, at *4.

At the founding, moreover, a felony indictment foretold far severer consequences for the indictee than the loss of gun rights.   The standard punishment for a felony was death.   *Medina*, 913 F.3d at 158. ("Capital punishment for felonies was ubiquitous in the late Eighteenth Century and was the standard penalty for all serious crimes." (cleaned up)).   It is "difficult to conclude" that the founding generation would have understood those standing accused of capital crimes, and thus facing death if convicted, to enjoy unfettered gun rights.   *See id*.   To the contrary, those under felony indictment were among the "unvirtuous citizens," *see Yancey*, 621 F.3d at 684–85, whom legislatures could lawfully disarm.

Doney's claim that § 922(n) is not supported by historical tradition fails, and

his motion should be denied.

## CONCLUSION

*Heller* and *Bruen* are clear that the Second Amendment protects possession

and use of firearms for lawful purposes by law-abiding citizens.   The Constitution

does not protect the conduct that § 922(n) prohibits.   Moreover, even if such

conduct were covered, this statute is consistent with the nation's historical tradition

of firearm regulation.   As this Court stated in denying Evenson's motion to

dismiss, "although § 922(n)'s constitutionality has not been squarely addressed by

higher courts, the Court reaffirms its conclusion that § 922(n)'s prohibition on

person under indictment from acquiring firearms 'is underpinned by the same

considerations as felons in possession: each stand for the principle that unvirtuous

persons [may] be disarmed (in this case, temporarily), while the case is pending.'"

*Stennerson*, 2023 WL 2214351, at *2.   Doney's motion to dismiss should be

denied.

DATED this 19th day of September 2023.

JESSE A. LASLOVICH
United States Attorney


*/s/ Paulette L. Stewart*
PAULETTE L. STEWART
Assistant U.S. Attorney

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule, this certifies that the body of the attached response

contains 3,010 words, excluding the caption and certificate of compliance.

JESSE A. LASLOVICH
United States Attorney


*/s/ Paulette L. Stewart*
PAULETTE L. STEWART
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

L.R. 5.2(b)

* * *

I hereby certify that on September 19, 2023, a copy of the foregoing document and exhibit were served on the following persons by the following means:

| | |
|---|---|
| 1, 2 | CM/ECF |
| _____ | Hand Delivery |
| _____ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-Mail |

1.   Clerk, U.S. District Court

2.   Evangelo Arvanetes
     Federal Defenders of Montana
     Attorney for Defendant

/s/ Paulette L. Stewart
PAULETTE L. STEWART
Assistant U.S. Attorney