IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ENRIQUE ANDRES DONEY,<br><br>Defendant. | CR 23-77-BLG-SPW<br><br>ORDER |

Before the Court is Defendant Enrique Andres Doney's Motion to Dismiss Indictment. (Doc. 18). Doney was charged on one count: violating 18 U.S.C. § 922(n) – Illegal Receipt of a Firearm by a Person under Indictment. (Doc. 1). The instant motion seeks dismissal of the single count. Doney argues that pursuant to Federal Rule of Criminal Procedure 12(b)(1), his indictment for being a prohibited person in possession of a firearm under 18 U.S.C. § 922(n) must be dismissed because § 922(n) is unconstitutional. (Doc. 19 at 2, 5).

For the following reasons, the motion is denied.

I.  **Legal Standard**

Federal Rule of Criminal Procedure 12(b)(1) provides that a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits. A pretrial motion is proper when it involves questions

1

of law rather than fact. *United States v. Phillips*, 367 F.3d 846, 855 n.25 (9th Cir. 2004). The Court has determined that Defendant's motion is appropriate for pre-trial resolution because it only involves questions of law.

## II. Analysis

In *New York Rifle & Pistol Association, Inc. v. Bruen*, the Supreme Court held that the Second Amendment protects an individual's right to carry a handgun for self defense outside the home and rejected the means-end scrutiny test that courts of appeal had been applying when assessing the constitutionality of firearms regulations. 142 S. Ct. at 2111, 2122, 2127 (2022). Instead, the Court held, a court must apply the test "set forth in *Heller*" by first considering whether the conduct in question is covered by the plain text of the Second Amendment, and then "assess[ing] whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 2131, 2134 (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008)). The Government has the burden to demonstrate such consistency. *Id.* at 2126, 2133. The Government does not need to point to an identical statute but only a "representative historical analogue." *Id.* at 2133. Importantly, in a concurring opinion, Justice Kavanaugh, joined by the Chief Justice, agreed with the Court's opinion in full but underscored that "the Second Amendment allows a 'variety' of gun regulations," and that nothing in the Court's opinion "should be taken to cast doubt on longstanding prohibitions on the

possession of firearms by felons and the mentally ill[.]" *Id.* at 2162 (quoting *Heller*, 554 U.S. at 626, 636). *Accord McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill ....' *Heller*, 554 U.S. at 626-27. We repeat those assurances here."). When analyzing the constitutionality of a firearms regulation, the Court considers the text of the Second Amendment's right to "keep and bear arms" as "it was understood to have when the people adopted it" in 1791. *Heller*, 554 U.S. at 634-35.

As Doney admits, this Court denied three other challenges to § 922(n) under *Bruen* this year. *United States v. Stennerson*, CR 22-139-BLG, 2023 WL 2214351 (D. Mont. Feb. 24, 2023); *United States v. Evenson*, No. CR 23-24-BLG, 2023 WL 3947828 (D. Mont. June 12, 2023); *United States v. Bulltail*, CR 22-86-BLG, 2023 WL 5458780 (D. Mont. Aug 24, 2023). In *Stennerson*, the Court explained that courts in this district have determined that *Bruen* did not effectively overrule prior precedent regarding gun-ownership prohibitions on certain persons because Ninth Circuit caselaw applying *Heller*—*United States v. Vongxay*, 594 F.3d 1111, 1118 (9th Cir. 2011)—is not "clearly irreconcilable with the reasoning or theory of intervening higher authority," namely *Bruen*. 2023 WL 2214351, at *2 (discussing *United States v. Boyd*, CR 20-121-DLC-1, at *6 (D. Mont. Jan. 25, 2023); *United*

*States v. Butts*, 637 F. Supp. 3d 1134, 1138 (D. Mont. 2022)). *Vongxay* did not apply the means-end scrutiny rejected by *Bruen*, which would render *Vongxay* clearly irreconcilable with *Bruen*. Rather, it applied *Heller* to conclude that the felon dispossession statute—§ 922(g)(1)—is constitutional because it is consistent with longstanding limitations on gun possession and because "the right to bear arms does not preclude laws disarming the unvirtuous citizens (i.e. criminals) ...." *Vongxay*, 594 F.3d at 1118 (citing Don B. Kates, Jr., *The Second Amendment: A Dialogue*, 49 Law & Contemp. Probs. 143, 146 (1986)).

As *Stennerson* explains, although § 922(n) has not been squarely addressed by the Supreme Court or the Ninth Circuit, the prohibition on persons under indictment from acquiring firearms is underpinned by the same considerations as felons in possession: each stand for the principle that unvirtuous persons may be disarmed—in this case, only temporarily while their case is pending. 2023 WL 2214351, at *2; *see Vongxay*, 594 F.3d at 1118.

Doney argues that, under *Bruen*, § 922(n) unconstitutionally infringes on his Second Amendment rights because individuals under indictment were not barred from receiving firearms until the passage of the Federal Firearms Act in 1938; therefore, § 922(n)'s prohibition falls outside the nation's historical firearm regulation. ((Doc. 20 at 5–6); *citing* 142 S. Ct. at 2131.) The United States responds that Doney has failed to show the Second Amendment covers his conduct and that

"the right to bear and keep arms" does not cover an indictee "receiv[ing] guns while under indictment." (Doc. 20 at 5). It argues that § 922(n)'s restriction on receiving guns while under indictment squares with this nation's historical tradition of restricting the gun rights of unvirtuous citizens. (*Id.* at 8).

In support of his argument, Doney cites to *United States v. Daniels*. (Doc. 19 at 7 (citing 77 F.4th 337, 345 (5th Cir. 2023)). The court in *Daniels* examined 18 U.S.C. § 922(g)(3), which bars receipt of firearms by unlawful users of a controlled substance. 77 F.4th at 339–40. In the absence of comparable 18th or 19th century regulations, the court found § 922(g)(3) unconstitutional. *Id.* at 355. This Court has already found *Daniels* inapplicable because its holding was narrowly tailored to its facts. *Bulltail*, 2023 WL 5458780, at *2. (D. Mont. Aug 8, 2023). This Court is bound by the law of the Ninth Circuit, and, in the Ninth Circuit, § 922(g)(3)'s prohibition on unlawful drug users possessing firearms—as well as § 922(n)'s prohibition on those under indictment possessing firearms—is still constitutional in light of *Bruen*.

The Court agrees with the Government that the plain text of the Second Amendment does not cover §922(n). The Second Amendment's plain text—"the right of the people to *keep* and *bear* Arms, shall not be infringed"—implicates the right to continued possession, not new acquisition. A person in the eighteenth century would understand keep to mean that a person "retain[ed]" or "preserve[d]"

5

an item, and bear to mean that a person they "carr[ied]" an item. Keep, Samuel Johnson's Dictionary (1st ed. 1755); bear in *id.* Section 922(n) maintains the status quo by prohibiting a person from receiving firearms while under indictment, and does not prohibit the retention, preservation, or carrying of a lawfully purchased gun.

Even if the Second Amendment's plain text is applicable, the prohibition against persons under indictment possessing firearms is rooted in this nation's history and tradition. Early laws in this nation's history governed the carrying of firearms by people the government considered unvirtuous or dangerous. Robert J. Spitzer, Gun Law History in the United States and Second Amendment Rights, 80 *Law and Contemporary Problems* 55-83, 72 (2017).[1] For those indicted on misdemeanor or felony charges, manuals for justices of the peace allowed justices to seize weapons from prisoners after arrest.[2] *See, e.g.*, John Bond, A Compleat

---

1. As early as 1619, colonial laws aimed to prevent those who colonial governments found dangerous from carrying firearms. *See* Spitzer at 72. For examples of laws throughout Anglo-American legal history requiring the seizing of arms by citizens the government found unvirtuous, *see* 4 Hen. 4, c. 29 (forbidding the carrying of arms in certain places by those who were not "lawful Liege People to our Sovereign Lord the King."); 1776 Pa Laws 11, An Ordinance Respected The Arms of Non-Associators, § 1 ("The colonel . . . is hereby authorized, empowered, and required to collect, receive and take all the arms in his district or township nearest to such officer which are in the hands of non-associators in the most expeditious and effectual manner in his power, and shall give to the owners receipts for such arms . . ."); Fla. Act of Feb. 12, 1885, chap. 3620 § 3 as codified in Fla Rev. Stat. tit. 2, pt. 5 (1892) 2424. ("The officer making any arrest under the preceding sections shall take possession of any arms or weapons found upon the person arrested, and shall retain the same until after the trial of such person, and if he be convicted, the said arms or weapons shall be forfeited.")

2. Manuals for justices of the peace were the most abundant law books in the colony of Virginia, and likely the rest of the colonies, and explained both substantive law and procedure to justices of the peace. *See* W. Hamilton Bryson, *Law Books in the Libraries of Colonial Virginians, in*

6

Guide for Justices of the Peace 43 (3rd ed. 1707) ("Any Justice of Peace may command Weapons to be taken from such prisoners as are brought before them."). Indictees for whom a surety had been issued breached the peace by carrying more weapons than they had previously.[3] Michael Dalton, The Country Justice 287 (1746). In other words, it was a violation of the terms of bail for an indictee to possess more firearms than they had before their indictment, a close corollary to § 922(n), which prohibits the receipt of firearms by persons under indictment. 18 U.S.C. § 922(n). Section § 922 is a modern iteration of this nation's historic tradition of restricting the acquisition of firearms by persons under indictment.

Thus, contrary to Doney's argument, the prohibition of indicted persons receiving firearms did not begin in 1938; it is rooted in this nation's history and tradition, making it consistent with the Second Amendment's historical understanding and therefore constitutional under *Bruen*. The Court affirms its conclusions in *Stennerson*, *Evenson*, and *Bulltail* and finds that § 922(n) does not violate Doney's Second Amendment rights.

---

"Esteemed Bookes of Lawe" and the Legal Culture of Early Virginia 31-32 (Warren Billings and Brent Tarter, eds., 2017).

3. Most people arrested on felony charges were not released on bail, and thus the terms on which indictees could keep their firearms were irrelevant. *See* Michael Dalton, The Country Justice: containing the practice, duty, and power of the justices of the peace, as well in as out of their sessions 386 (1746). Nonbailable offenses included murder, treason, notorious theft, arson, and counterfeiting. *Id.* (citing 3 Edw. 1 c. 15).

## III. Conclusion

For these reasons, IT IS SO ORDERED that Defendant Enrique Andrey Doney's Motion to Dismiss Indictment (Doc. 18) is DENIED.

DATED this 3rd day of October, 2023.

_____
SUSAN P. WATTERS
U.S. DISTRICT COURT JUDGE